You may proceed. May it please the Court, good morning. My name is Tom Crouch. I'm representing Franklin Manufacturing Company. You might want to just move that microphone. Is that a little? Yes, that's better, thank you. Is that better, Your Honor? Yes, for me anyway. I'd like to reserve five minutes if I could. We're going to shift gears here and address the Uniform Commercial Code, which is at the heart of this case. In particular, we're looking at Section 2-719, which is a provision that is a part of the code that intends to apply the risk allocation features, if you will. Section 2-719 allows parties to the sale of goods to agree in advance as to the particular remedies that would be available in the event of a breach of warranty, and it also allows parties to agree in advance to exclude recovery of consequential and incidental damages. Those two provisions are at the heart of this case. Franklin sold a very sophisticated piece of machinery for a little less than a half a million dollars to Sharp Structural. After a period of time, the machine was not functioning as the buyer expected. There were numerous complaints. Franklin, over the course of a year, made many efforts to satisfy its customer, and unfortunately, the customer, being unsatisfied, filed this action at about 11 months after the machinery was installed at their facility. At the outset, Franklin took the position that it hadn't breached. It was still complying with the warranty provisions, attempting to make repairs when there were problems, but it also asserted the UCC defenses, the 2-719 defenses. But at one point, Franklin refused to refund the purchase price, right? Toward the end of that 11-month period, Franklin was exploring the possibility of replacing the machine, and the customer had said, just take this back. The contract at issue gives the return of the purchase price part of that limited remedy to the discretion of the seller. At that point in time, yes, Your Honor, they were exploring the possibility of either continuing to repair or to replace it with perhaps a machine that would satisfy the particular needs at that time. Where is the refund issue raised in the district court? It's raised probably no less than three times, Your Honor, in the summary judgment motion, which specifically asked the court to dismiss all claims for remedies beyond the repair, replacement, or refund. Again, at the conclusion of the case, but before submission to the jury, a Rule 50A motion for judgment as a matter of law. Again, arguing to the district court that there was nothing to submit to the jury on the limited remedies issue, that they should be limited as specified in the contract. And then again, in a Rule 50B and 59 motion, post-trial motion, asking the lower court to reduce the judgment amount. You can't just say we should win for all the reasons. Did you argue in the summary judgment motion that the refund was the kind of the end-of-the-line remedy you had offered? Yes, Your Honor. The motion specifically asked the court to limit it to the repair, replacement, or refund of the purchase price. And where in the summary judgment motion did you argue refund as opposed to this is the warranty? Did you argue that? It was expressly stated in the motion. Your Honor, I want to go back, Judge Tesheev, to your question about the refund aspect of it. Because there's also been this argument that, gee, we're in the course of this litigation for an extended period of time, and the refund hasn't been made. But that was a very unfair argument where the refund or the limited remedy defense has been asserted. The court finds an unspecified fact question that we don't believe existed. And after that, after mediation fails, an offer of judgment is made for an amount that far exceeded the $474,000 amount. So the fact that we're in litigation, and the litigation has unfortunately in this day and age taken years, itself shouldn't defeat the agreed-upon limited remedy. In terms of what is a reasonable time for the offering of a refund, is that a jury question? No, Your Honor. And this is where I think maybe things got askew. There's plenty of case law that focuses on repair or replacement only limited remedies. Many sellers will say, I'm only going to sell this product, and if there's a problem with it, your limited remedy is repair or replacement. And there's a lot of case law out there that says, well, if you can't repair or replace it within a reasonable amount of time or after reasonable amounts of effort, it fails of its essential purpose. And in many instances, there's a fact question about whether those, you know, whether it can be repaired within a reasonable time. Those cases have to be distinguished from a repair, replace, or refund remedy, because the repair or replace, the purpose of that remedy is really to make sure that a conforming good is in the possession of the buyer. The refund remedy is very different. Its purpose is not to make sure of the former, okay? So the refund remedy is what many courts have said prohibits or prevents the repair or replace only from failing of its essential purpose. Well, if you weren't able to repair it or replace it, some product, and then you didn't offer a refund until 10 years later, then you would have met the essential purpose of the remedy in your view? That's an extreme example, 10 years later. But what's the difference? In other words, isn't that why the reasonableness requirement is imported? How do you distinguish between I tried to repair it, I can't really replace it, I don't have any left, and so I'm going to give you your money back like now or three months from now, from 10 years from now? I mean, what is the legal standard that lets you distinguish between those two circumstances? Your Honor, I would just urge you to follow those courts which all of those cases involve litigation process, the Arcata Graphics case, the Marr Enterprises case, same situation. Parties sued, disputes, we think we complied, we didn't breach, we think you did. There's litigation. But in the litigation, the party says our remedy is limited to this. It's up to the court to enforce it. And here? Is there an Arizona case that I would look to as being the closest to what you just argued? Southwest Pet Products is applying Arizona law. It's a federal district court case. The Harris case from Alabama. Keep in mind Franklin is an Alabama company and Sharp Structural is a ---- What law governs this? That was disputed in the court below, principally because of a difference in the law on whether a consumer fraud claim exists. For purposes of this one, this issue of enforcing the limited remedies, it's our position that the law is the same in either state as shown by those cases. And so there isn't a conflict, there isn't a need to make that choice. And by the way, Your Honor, when we prepared our brief, for whatever reason, the West site for that Harris case wasn't available even though it was nearly a year later, but it's available now and it's 949 South 2nd, 916. Again, 949? Is that what you said? 949. South 2nd? South 2nd, 916. I better look at my notes just to make sure I'm correct on that. All right. Thank you. Just to close. Two more questions. Sure. Close on that issue. Did you make a 50A motion? Yes. My co-counsel did. There was both a motion at the conclusion of trial, or excuse me, at the conclusion of the evidence, a 50A motion. There was also a 50B and 59 motion, post-trial motions. And another question is if it were to be determined that attorney's fees is in play, have you waived opposition to that by not addressing it in your reply brief? You lost me, Your Honor. As I read the appellee's brief, they asked for attorney's fees, correct? I don't recall that. Well, it's pretty clear. It's a whole big section. And then you didn't say anything about that in your reply brief. So my question then so I went back and reread very carefully your reply brief to see if I'd missed something. Well, then the answer to that question is no, Your Honor, I haven't. And to the extent the case is being submitted today, we would obviously oppose it for not the least of which reasons is we're entitled to reversal of the underlying. Right. And I'm just asking to suspend judgment on that portion and look at the attorney's fees. And the attorney fees, there isn't any attorney fees in the judgment below. Right. But there is under the argument is that under Arizona law, if you prevail, you can also you prevail on attorney's fees on appeal. And so the appellee has asked for attorney's fees on appeal. And then my question was, if you didn't oppose that, did you waive opposition to attorney's fees on appeal as a matter of law? Under at least Arizona law, if the court were to entertain that, there's a whole slew of factors to consider in ARS. You didn't tell us what not to consider or what to consider because you didn't address it. Well, but it begins with the burden of the party seeking the fees to show those elements that are met, which didn't occur in the briefing either. I want to switch gears a little bit to the second half of this, which is the exclusion for incidental and consequential damages. The UCC Section 2-719 has a separate provision that addresses the limitation on consequential and incidental damages or, excuse me, consequential damages. And that provision says that those provisions are enforceable unless unconscionable. And it's our position that the separate limitation for consequential damages was applicable as a matter of law, irrespective of the fails of its essential purpose limitation, which is addressed in paragraph 2 of that provision. And we have referred the court to a number of authorities that supports that analysis. Here there was talking about a provision in an agreement between two merchants where the alleged loss is commercial in nature. And under those circumstances, as a matter of law, it's not unconscionable, nor was there ever any proof or argument to the contrary below. Isn't there this Arizona case that says, you know, in spite of your argument that this business about whether you can separately waive consequential damages is really a part of the same argument about, you know, whether or not the limited warranty can be enforced? I think that's in the context of a repair-replace only limited remedy. But when you look at the analysis in that, and that would be the Cali case, I believe you're referring to, or Khalid case. When you look at that Southwest Pet Products case, it distinguished the Khalid case. The Southwest Products case has the refund remedy available also. And then the court goes on to enforce the exclusion for consequential damages under the unconscionability analysis. And then the Harris case, which I gave the site earlier, is to the same effect, where you have the refund remedy available. An exclusion for consequential damages should be enforced. And just to go back to my question on the Rule 50A motion, could you give me the record citation of where you raised the consequential damages issue in the 50A motion? I've given the record cite in my brief, Your Honor. I don't have it at the front of my mind right now. I can certainly do that. I couldn't find it. I mean, I couldn't find it in the record, so maybe you can tell me without giving me the specific record cite, what you think was the gist of your argument that would cover consequential damages. There were two separate provisions in the agreement, in the sales contract. One was the limitation of remedies, which was repair, replace, or refund the purchase price. There was a separate limitation of damages provision, cited, briefed. The lower court's attention was drawn to it on numerous occasions in each of those motions that I've identified, Your Honor. And authority was drawn, the Wilson case from this court was drawn to the district court's attention in the briefing. I believe it was in the summary judgment briefing, which addresses the 50A motion in your summary judgment. Was that argued in the 50A motion? Yes, Your Honor. Everything was repeated in the 50A motion, a separately filed motion. And, Your Honor, if I will, even if it hadn't been, however, I mean, all interlocutory orders that affect a judgment are reviewable on appeal from the judgment. And the summary judgment motion was filed, argued, denied. That's reviewable. And in that motion, we asked the court to rule as a matter of law that the remedies would be limited in accordance with the repair, replace, refund, and in accordance with the exclusion for consequential damages. Either of those require a reduction of the judgment to the $474,654 number. I've eaten in, I think, to some of my rebuttal time. Right. But I do want to finish with one quick point here. These provisions are very important, Your Honors. The code, the UCC has an important public policy of allowing merchants in advance to allocate risks. They enter transactions with the assumption that they're going to be enforced. Many times, consequential damages in the form of lost profits could greatly exceed and be multiples of the amount of the sales contract involved. Merchants enter these transactions and place these limitations in here so that they allocate risks. This risk was allocated to the buyer, and it should be this court's first priority to enforce the agreed-upon allocation. Thank you. You may have the remaining time to rebuttal. Your Honors, I'm Lyle Aldridge, representing Sharp Structural, a plaintiff in this case. And if there's something that should not be overlooked in this case, it's that the jury found as fact that Franklin had engaged in consumer fraud and that that fraud caused damage to Sharp. Our client was induced to purchase this machine by representations that were untrue about what the machine was capable of doing. The jury received only one set of instructions on how to determine damages, and it found that Sharp had been damaged and was entitled to receive $1,230,000 in compensation. Then, moving through the form of verdict in order, it determined that Franklin had engaged in the acts constituting consumer fraud, that those acts had caused damage to Sharp. But then it did something odd, saying that Sharp was entitled to no damages on that claim after it had awarded the $1,230,000. It did the same thing with respect to the third claim that was presented, and I believe that the only reasonable interpretation of the verdict is that the jury made one determination of damages and was telling us in its answers that it was not, that Sharp was not entitled to any more damages over and above the $1,230,000. Except the jury also said, and also sent back that thing. Right. They also said, send back the machine, which we have argued about. I understand. That's a separate issue. A separate issue. I don't. Let me just focus. A lot of the briefing goes to this failure of essential purpose, et cetera. And counsel today tries to narrow that and said, really, it's not a question of repair and replace. We offered you up a refund, and that's the last leg of the warranty, and that's it. So what is your response to that? You can search the record forever, and you won't find any testimony or any evidence that Franklin ever offered a refund at any time. Counsel says that saying 10 years is kind of extreme. Well, this machine was purchased in May of 2002, and here I am in June of 2008, and not a penny has been paid in refund yet. Offered. Not offered even. They talk about, and I think it's inappropriate to refer to the offer of judgment that was made basically on the eve of trial, but even that, that's not a reasonable remedy after two years of failure for the machine. I do have to, in fairness to counsel, he did not try this case, and I did. The Rule 56 summary judgment motion that was made did not raise this issue. There is a single paragraph on page 10 of the motion that makes a general allegation that the plaintiffs are seeking damages other than what is specified in the contract and asking on that basis for judgment to be entered in toto against the defendants. Was there a Rule 50A motion on this issue? There was not. The Rule 50A motion. The 50A motion was oral, right? It was, and it appears in my supplemental excerpts of record, page 357, 358, and 359, and all that counsel argues there in about two pages is that there's, he argues first that there's, he asked for, he calls it a directed verdict on the implied warranty claim because there's an express warranty. He argues that there's no evidence of any fraud and carries on with that for the next page, saying there's no fraud in this case, Judge, there's no basic, no basis for punitive damages, and then concludes implied warranty, the fraud and punitive damages should go out, it should go back to being what it is, a straight breach of express warranty, a breach of contract case. No reference there to a limitation in the contract, nothing in that argument. The first time that we ever saw the specific argument that's now being made, which is this case doesn't fall within the general case law regarding failure of the warranty because there's a refund and that there's a special class of case law that applies to refund warranties, the first time that argument was raised was in the Rule 50B motion made after the case had gone to the jury, after the jury had been given the instructions that Franklin requested, and those jury instructions instructed the jury what they needed to find to find that the warranty had failed, and those were the instructions that they followed. Let me ask you just about offer of judgment. I assume it's in Arizona. It's like in other states that you make this offer of judgment and it sets this threshold that has various legal consequences, sometimes fees, costs, other things like that, depending on how the jury verdict turns out. I think it was a Federal offer of judgment in a Federal court, Your Honor. Okay. We tried to, so. Was it for the amount of the refund? You know, I don't recall whether it was or was not, honestly. I mean, it just seems to me that the Rule 68 pretty clearly says that that offer is not admissible for any purpose other than. I understand, but I'm just asking if that was for the amount of the refund. Do we know that one way or the other? I'm sure it's in the record and it's just not a point. Other than what might be in the offer of judgment of Rule 68, there was no tender of a refund or no written evidence of a refund offer. No, the only evidence on that point was Mr. Sharpe's testimony that he had requested a refund on six or seven occasions and the internal memorandum from the defendant's controlling person saying that Mr. Sharpe had asked for a refund and he had refused to give the refund. That was the only evidence on a refund. So this issue just is not in the case as I see it because it was not preserved as an appellate issue. I would point out, however, that even if it were in the case, the case law that's cited is far from clear as to what the consequence is of a refund remedy. Counsel is correct that there's some case law from other jurisdictions saying that when you have a refund remedy as one of the limited remedies, that simply precludes the possibility of a failure of the remedies. And that sort of depends upon what you think the essential purpose of the warranty is. The courts that follow that view take the position that the essential purpose of the warranty is simply to provide a reasonably adequate, if limited, judicial remedy in the case where somebody breaches the warranty. The other view is that the purpose of these remedy limitations is that the parties are making an agreement that one party will be doing what it can to limit the consequential damages or eliminate them, and only because the seller is making promises that it will repair or replace the goods is the buyer agreeing to a limitation on its damages. I think that is the rule that applies to this case specifically because of an unusual feature of this case, and that is the warranty in this case was a separately negotiated agreement. Contrary to what appears to be the representations in the brief, the quote that was initially transmitted for this machine to Mr. Sharpe, Mr. Sharpe testified did not include the terms and conditions of sale and did not include the limited warranty that included the warranty limitations. First time he saw that document, he said it included a couple of other pages that he never saw again, but that it didn't include those documents. First time he saw those documents, according to his testimony, was when the machine was delivered to Tucson in May, and at that point he looked at those documents and he was asked to sign those documents by the technician who set the machine up, and he said, no, I'm not signing those documents, and they then set forth a separate agreement that did not include the waiver of consequential damages. My client's signature on that form has never appeared, and he's testified that it was never a part of any of the documents that he saw or agreed to until he disagreed with him. But the documents he did sign on that kind of second time around did include the refund option. Did include. Basic warranty option. That's correct, but I think this was explicitly, the first part of that agreement was an explicit promise from Franklin saying if there's a defect in materials or workmanship, we will fix it or we will replace it or, at our option, we'll refund the money. That was a separate agreement that they were bound to follow, and they did not. And I think if they, under these circumstances, where it was a separately negotiated agreement, if they want to enforce what our client was giving up, saying we're going to give up the consequential damages or we're going to say, they didn't say consequential damages, but they said we're going to agree to a limited form of relief, well, you can't go out and tell people, here's what we're going to do, and in return you're agreeing that we will only have liability for these things and then not do those things. I mean, they did not repair it. They did not replace it. They did not provide a refund. The case law that is cited by defendants is somewhat ambiguous on this, even in those cases where the issue has properly been raised. I would point out, for instance, that counsel cited Arcata Graphics v. Heidelberg Harris, Inc. In that case, the defendant had actually given the refund, and that the plaintiff, the actual holding in the case and the basis of the decision, was that the plaintiff had accepted a refund from the defendant as full settlement of all claims. And that appears at 874 Southwest 2nd. I forgot to write down the page number here. And in Figge International v. Distillery Saralis, Inc., the court points out specifically, quote, That's at 190F 3rd, 254. The machine had been bought in April and returned in November. So in that case, there had been from April until November, and in November the defendant accepted its refund, and then the dispute arose as to whether Figge International should be liable for consequential damages. Well, in that instance, they had done what they said they would do, to relieve themselves of liability for consequential damages, and the court said that they had done exactly what was envisioned and stated by the warranty agreement, and therefore they weren't liable for consequential damages. There is a Ninth Circuit case that cited Marr Enterprises v. Lewis, and in that case this court indicated that the analysis is somewhat factually intensive and that it was for the trial court to determine whether there was evidence from which the jury could determine that the refund remedy even was inadequate. In that case, the court happened to determine that there wasn't evidence sufficient to show that the refund was inadequate. I would notice that that court was, that was a 1977 case applying Washington law, and at least one, the Washington Supreme Court has now said otherwise in a case called American Nursery Products v. Indian Wells Orchards in 1990. Arizona doesn't have case law clearly on point, but Judge Collins did a very good job in this case. He didn't rule in my favor on everything, but there really is just no basis for an appeal in this case. I believe that even if the judgment on the warranty claim is set aside, you're left with a situation where that will not support a judgment for Franklin for any less than the jury found to be the damages suffered by the defendant, and that the only rational interpretation of the verdict would be that their verdict was for the full amount, $1,230,000 on each of the three claims, and that their zero indication was merely to say that you're not entitled to any additional damages. I didn't take an appeal from that, and to this day I don't think I'm aggrieved by that, so as to have anything to appeal unless and until the trial court or this court sets aside the first judgment. What we have is what under the case law from this circuit defines as a general verdict, and I have a general verdict for $1,230,000 and findings by the jury that each theory of liability was supported and found to be true by the jury, and it seems to me that even if the court were to accept this belatedly raised contention that this case goes outside the path because of the quote refund remedy, which was not raised in the trial court, that I then have a judgment against them based on consumer fraud and negligent representation, because that's the only point at which it becomes relevant that they entered that zero verdict. Unless the Court has more questions, I'm going to sit down. Ginsburg. It has been on your request for fees. Yes, Your Honor. Which was in your brief. Do you think, given the posture of the case, since no one can know, for example, you couldn't know whether we might overturn a verdict on a warranty, and likewise your colleague couldn't know if we weren't going to overturn a verdict on a warranty whether or not fees might be in play, do you think that the rules and fairness would permit him an opportunity to respond on fees if we felt that fees were an option? I think the Court always has discretion to do what it thinks is fair in that regard. I'd obviously be arguing as part of my submission that they waived the issue. But I'm not even sure that the case law requires you to oppose something like that. I'll be frank about it. I'm not sure that you're required to make an opposition. And I certainly think it would be within the discretion of the Court. But there's nothing to oppose. The Arizona law on this point is clear. The prevailing party on appeal in a case that arises from contract is entitled to seek a reasonable award of attorney's fees. And there's case after case after case from Arizona on that point. And I don't know of any exception that this case would even conceivably qualify for. Do you think entitled is a matter of right, or is it a discretionary call? It's a discretionary award, but as a general rule, the Arizona courts award it. There's some discretion, and obviously the amount is within the discretion of the Court. I would point out that Judge Collins has not yet ruled on our application for fees. Do you have an application pending in the district court? Yes, our application is still pending in the district court. I imagine that would be an appropriate step. He probably wants to find out what the answer will be here. Probably. Thank you. Thank you. You have several minutes for rebuttal. Your Honor, the Rule 50A motion was not just oral. What has been cited, I think, were just pages of a brief exchange on the record with the trial court, where there's just a brief discussion of it. But at Record Site 112, the Clerk's Record 112, is the written motion, 50A, addressed these issues. The 50A motion? All right, I'll look that up. Clerk's Record 112. This is no longer a tort case. It's only a contract case. This was not a general verdict. The jury was asked specific questions, and they were asked specific damage questions for each of the three claims, each of them saying, what damages, if any, do you find? They found damages on the breach of contract claim. They did not award any damages on the other claims. There was no post-trial motion made. There was no request to, before the jury was discharged, to return the matter to the jury. There was no post-trial motion asking for relief on some sort of inconsistent verdict. And there was no cross-appeal filed from those no-damage findings. So those are not part of this appeal. The only issue remaining is whether the contract should be enforced as it was written and agreed upon, and it's our position that as a matter of law, this Court's first priority should be enforcing the agreement that the parties reached. Thank you. Thank you for your argument, counsel. Thank both of you for your arguments this morning. Sharp Structural v. Franklin Manufacturing is now submitted. Would we like to take a brief recess? Yes. All right. Why don't we have the parties arguing in the United States v. Lazarenko come up and get organized, and we will take a brief recess, and then we will be back.
judges: Tashima, McKeown, Gould